UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LIBERTY MUTUAL INSURANCE
COMPANY,

    Plaintiff,

        v.

MARK PUKHOVICH,
OKSANA PUKHOVICH,

    Defendants.

Civ. No. 3:20-cv-00341 (JAM)

**RULING ON APPLICATION FOR APPOINTMENT OF APPRAISAL UMPIRE**

Before the Court is Liberty Mutual Insurance Company's ("Liberty"), application for the appointment of an appraisal umpire to resolve an insurance claim for a property located at 20 Blanket Meadow Road, Monroe, Connecticut (the "Property"). [Doc. #2]. Respondents are Mark and Oksana Pukhovich. (the "Respondents"). The Court has jurisdiction over the subject matter of this Application pursuant to the Federal Arbitration Act, 9 U.S.C. §5. (the "FAA"). For the reasons that follow, the Court appoints William Zimmer as the appraisal umpire.

**I.    BACKGROUND**

The following facts are undisputed for purposes of this ruling. Liberty issued a homeowner's insurance policy to Respondents bearing policy number H3721811680971, (the "Policy"), for the period of June 14, 2019 through June 14, 2020. Respondents submitted an insurance claim under the Policy for a September 8, 2019, water loss. Liberty and Respondents have been unable to agree on the value of the loss to the Property [Doc. #2 at ¶¶5-6].

Section I, Paragraph 6 of the Policy contains the following Appraisal provision:

1

**SPECIAL PROVISIONS-CONNECTICUT**

**SECTION I-PROPERTY CONDITIONS**

> **6. Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a competent and disinterested umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
> a. Pay its own appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.

[Doc. #2-1 at 33]. On November 4, 2019, Respondents demanded that an appraisal take place in order to resolve the claim and named Mark Sandler as their appraiser. [Doc. #2 at ¶8 (citing Ex. B)]. On November 21, 2019, Liberty named Bob Margetta as its appraiser. [Doc. #2 at ¶9 (citing Ex. C)].

Pursuant to the Appraisal clause, the parties' appraisers exchanged a list of candidates that they believe are qualified to serve as umpire for the appraisal proceeding. On December 1, 2019, Mark Sandler, appraiser for Respondents, submitted the names of 2 candidates to serve as umpire, Mitch Urich and Sergie Antonov. [Doc. #2 at ¶10 (citing Ex. D)]. On December 10, 2019, Bob Margetta, appraiser for Liberty, submitted the names of 2 candidates to serve as umpire, William Lamb and William M. Zimmer. [Doc. #2 at ¶11 (citing Ex. E)]. On December 13, 2019, Mark Sandler submitted the names of 2 more candidates, Valery Shames and Jeremy Wolf. [Doc, #2 at ¶11 (citing Ex. F)].

Appraisers Sandler and Margetta were unable to agree on a candidate to serve as an umpire. The 15 day window set forth in the Policy for selection of an umpire expired.

On March 13, 2020, Liberty filed an Application for Appointment of Appraisal Umpire, requesting that this Court select an umpire from the list of candidates submitted by Appraisers Sandler and Margetta. [Doc. #2].

On March 27, 2020, this Court ordered the parties to "file a joint responsive pleading identifying two potential umpire candidates along with additional information relating to the candidates' qualification, along with a concise statement addressing why that candidate is/is not qualified for the appointment." [Doc. #11]. The parties were also directed to "query the candidates on their availability to act as an umpire in this case in the next ninety (90) days." *Id.* The Joint Responsive Pleading was due on April 10, 2020.

On April 6, 2020, Liberty sought an extension of time in which to comply with the Court's March 27, 2020, stating that it had "requested the Defendants provide information regarding the qualifications of their presented candidates in order to appropriately respond to the Court's Requested Responsive Pleading." [Doc. #12].

On April 10, 2020, Liberty filed its compliance with the order for Joint Responsive Pleading stating that, "[d]espite requesting the Defendants provide their position in compliance with this Court's Order, Plaintiff did not receive any response…." [Doc. #13 at 1]. Liberty provided the Curriculum Vitae for Respondent's proposed umpire candidates, Jeremy Wolf, Frank Ferrara and Sergie Antonov and for Liberty's proposed umpire candidate William Zimmer. [Doc .#13 Ex. A-D]. Liberty reported that its other proposed candidate William Lamb was unavailable within the next ninety days to act as an appraisal umpire in this case. [Doc. #13 at 1].

The time for Defendants to file their compliance with the Court's order was extended to April 24, 2020. [Doc. #14]. On April 24, 2020, Liberty refiled its report regarding selection of

3

umpire, stating that "it attempted ,in good faith, to obtain the respondents' portion for a Joint Responsive Pleading, but has not received a response." [Doc. #15 at 2]. Although, Defendants provided Curriculum Vitae for three of their candidates: Jeremy Wolf, Frank J. Ferrara, and Sergei Antonov, they did not state whether any of these candidates are available to act as umpire within the next ninety days. This information was requested by the Court to be included in the Joint Responsive Pleading. [Doc. #13, Ex. A-C; #15, Ex. A-C]. Similarly, Defendants provided no memorandum of law in support of its proposed candidates and offered no argument in opposition to Liberty's proposed candidates.

II. **DISCUSSION**

> Here, the Policy does not provide criteria to be used in the umpire section process.
>
> "[G]enerally accepted insurance principles dictate only that 'an umpire selected to arbitrate a loss should be disinterested, unprejudiced, honest and competent.' " *Brothers v. Generali U.S Branch,* No. CIV.A. 1:97–CV–798–MHS, 1997 WL 578681, at *3 (N.D. Ga. July 11, 1997) (quoting 6 Appleman, *Insurance Law and Practice* § 3928, at 554 (1972)). The umpire "should be impartial, honest, and competent, and should not live an unreasonable distance from the scene of the loss." *Corpus Juris Secundum,* Insurance § 1897 (2011).

*Pennsylvania Lumbermens Mut. Ins. Co. v. Buettner Bros. Lumber Co.,* No. CV-12-S-865-NE, 2012 WL 1748028, at *2 (N.D. Ala. May 11, 2012); *see Travelers Indemnity Co. v. Everest Reinsurance Co.,* No. Civ. 3:04MC196(TPS), 2004 WL 2297860, at *2 (D. Conn. Oct.8, 2004)(weighing impartiality, relevant arbitration experience, experience in the insurance and reinsurance business); *Employers Ins. Co. of Wausau,* 2009 WL 3245562, at *5-6 (W.D. Wis. Sept. 29, 2009)(considering each candidate's impartiality, prior experience serving as an umpire and/or arbitrator and experience in insurance and/or reinsurance arbitrations.); *In re Arbitration between Glacier Reinsurance AG & Odyssey Am. Reinsurance Corp.,* No. CIV. 3:07CV00583AWT, 2007 WL 1875658, at *1 (D. Conn. June 27, 2007)(considering prior service as an appointed arbitrator, expert witness, service as an umpire, potential conflict of

interest and likelihood of partiality). After a careful review, the Court appoints William Zimmer as appraisal umpire.

Since 1972, Zimmer has worked as a property adjuster serving in a variety of positions, including but not limited to, senior adjuster, adjuster in charge, branch manager/regional general manager, senior adjuster-property claims, SIU investigator-property claims; assistant VP-property claims; and VP Claims-Master Adjuster. [Doc. #13-4, Ex. D]. Zimmer is licensed as an adjuster in Connecticut, Vermont, New Hampshire and Rhode Island and has been a member of the New England Claim Executives Association since 1977, serving as President, Program Chair, Steward and Treasurer. He has also served as an umpire or appraiser in numerous formal appraisals since 2005. As an appraisal umpire and/or appraiser Zimmer provided client references listing 16 Connecticut client adjusters and/or construction companies and 14 client insurance companies, including Liberty Mutual Insurance Company. The Court finds that prior work with Liberty is not a disqualifying factor in light of the number of insurance companies listed on Zimmer's CV and absent evidence of bias. *Employers Ins. Co. of Wausau*, 2009 WL 3245562, at *5 ("[U]nless an arbitrator's partiality is blatant, it is rare for a court to disqualify an arbitrator while an arbitration is still pending.")(citing cases) As set forth above, Respondents filed no response to the Court's order despite having an opportunity to do so. There is no indicia that Zimmer would not serve as umpire in an impartial and disinterested manner. "The proper way in which to insure impartiality and neutrality in arbitration proceedings is for the parties to establish "an atmosphere of frankness at the outset" of arbitration, voluntarily disclose possible biases, improper ex parte communications or other conflicts of interest and determine, in conjunction with the arbitrators, whether an arbitrator violates the requirements of disinterest and impartiality and should recuse himself." *Id* (citing cases). Here, Zimmer voluntarily disclosed

that he has worked with Liberty. Last, Zimmer resides in Connecticut, the same state where the subject Property is located, and indicates that he is available to serve as umpire within the next ninety days. It is for these reasons that the Court selects William Zimmer as the appraisal umpire in this case .

### III. CONCLUSION

Accordingly, Liberty Mutual Insurance Company's Application for Appointment of Appraisal Umpire  **[Doc. #2]** is **GRANTED**.[1] The Court appoints William Zimmer as umpire for an appraisal proceeding to resolve the insurance claim for the property located at 20 Blanket Meadow Road, Monroe, Connecticut.

As this is the only relief sought in this case, the Clerk of the Court is directed to close the case, without prejudice to either party reopening the case within thirty days if William Zimmer is unable or unwilling to serve as umpire in this case. **Any application to reopen must be filed within thirty days of this ruling and order.**

This is not a recommended ruling. This is a non-dispositive ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED, this 5th day of May, 2020, at Bridgeport, Connecticut.

                           */s/ William I. Garfinkel*
                           WILLIAM I. GARFINKEL
                           United States Magistrate Judge

---

[1] *In re The Travelers Indem. Co.,* 2004 WL 2297860, at *1 (finding that a ruling on an application for appointment of umpire is non-dispositive.) (citing *Herko v. Metropolitan Life Ins. Co.,* 978 F. Supp. 141, 142 n. 1 (W.D.N.Y.1997)).